UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LUSTER RAY NELSON, II,

        Plaintiff,

v.

MATTHEW MACAULEY et al.,

        Defendants.
_____/

Case No. 1:20-cv-70

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought under 42 U.S.C. § 1983 by a state prisoner. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), further requires the Court to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, without prejudice, Plaintiff's claims against all Defendants other than Defendant Simia because they are misjoined. The Court will also dismiss, with prejudice, Plaintiff's Fourteenth Amendment due process claim against Defendant Simia for failure to state a claim.

**Discussion**

**I.       Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility as well as at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF employees: Grievance Coordinator Unknown Yuhas; Case Manager Unknown Ciluffo; Law Library Supervisors Unknown Novak and Unknown Zupon; Correctional Officers Unknown Corbeet, Unknown Marihugh, Unknown Hann, Unknown Sanborn, Unknown Cullimore, Unknown Randalph, and Unknown Shaffer; PC Officers Unknown Williamson and Unknown Haynes; Hearing Officer Unknown Morris; Chaplain Unknown Cheney; and Psychiatrist Unknown Saad. He also sues DRF Grievance Coordinators Unknown Figueroa and Unknown Becher. In addition, Plaintiff sues IBC employees Warden Matthew Macauley; Correctional Officers Unknown Peper, Unknown Guile, Unknown Lundquist, Unknown Simia, Unknown Connor, Unknown Webster, and Unknown Miller; and Hearing Officer Unknown Novak. Finally, he sues Michigan Reformatory Psychiatrist Unknown Patel and Richard Russell, the manager of the grievance section of the MDOC Office of Legal Affairs.

Plaintiff's complaint is not a model of clarity. The Court acknowledges that Plaintiff's assertions that he has a learning disability, lacks a high school diploma, and that he prepared his amended complaint to the best of his ability. Yet, Plaintiff's penmanship, small script, and editing marks compound the challenge of deciphering his allegations, which appear to span events occurring between March 2019 and March 2020. The crux of Plaintiff's complaint, however, alleges that multiple Defendants have retaliated against him for filing grievances. The

earliest example of this conduct that is clearly described allegedly occurred on June 11, 2019, and involved Defendant Simia.

Plaintiff alleges that Defendant Simia filed a false charge of misconduct, threatened, and assaulted Plaintiff.  Plaintiff asserts that, while attending a school class at IBC, he realized he had forgotten his prison identification.  He received permission from the teacher and the school staff officers Finess and Pfeiffer to return to his unit to retrieve his identification. Plaintiff presumably retrieved his identification, but while returning to school, Defendant Simia issued Plaintiff a ticket for disobeying a director order.  Defendant Simia put Plaintiff on the ground and cuffed him.  Plaintiff alleges that Defendant Simia quickly got up while pulling on the cuffs, thereby cutting Plaintiff's left hand.  Defendant Simia then took Plaintiff to segregation. Plaintiff alleges that Defendant Simia took Plaintiff through the segregation door to an area without video coverage.  Defendant Simia allegedly punched Plaintiff and told him that staff were tired of Plaintiff filing grievances against them and that "they were going to kill h[i]m, or make h[i]m do his [indecipherable]."  (Corrected Am. Compl., ECF No. 15, PageID.126.)

Plaintiff further alleges that on an unspecified date, Defendant Simia moved Plaintiff from his cell to a dirty cell.  Defendant Simia explained that he had moved Plaintiff because Plaintiff's prior cell had a broken sprinkler.  When Plaintiff arrived at his new cell, he saw the bunk, desk, and floor were covered in feces.  Plaintiff also found broken glass on the floor of the cell. Defendant Simia allegedly told Plaintiff, "[i]f you stop telling on staff you won[']t have these things going on."  (*Id.*, PageID.135.)  Plaintiff asserts that he was kept in the cell for "an extended period." (*Id.*)  The cell apparently remained dirty during this time because Plaintiff was refused cleaning supplies to clean it himself, and the inmates staff assigned to clean the cell refused to clean it.

Plaintiff does not attribute any further specific conduct to Defendant Simia in the remainder of the complaint. Instead, Plaintiff alleges a series of unrelated claims against the remaining 28 Defendants involving retaliation, lost property, disclosure of Plaintiff's grievances to prison staff, a second placement in a feces-covered cell, offensive and racist language, threats that Plaintiff would not make it out of prison alive, false tickets, and assault.

Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

## II.    Misjoinder

Plaintiff has joined 29 Defendants in this action connecting unrelated policies and a series of discrete events during the period from March 2019 to March 2020.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

4

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, [sic] and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004) (discussing purpose of PLRA). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or

appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the

possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the

7

dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

The Court therefore will look to Plaintiff's earliest set of clear factual allegations in determining which portion of the action should be considered related. Plaintiff's earliest allegations assert that Defendant Simia threatened and used force against Plaintiff after issuing Plaintiff a misconduct ticket. Plaintiff's allegations connect no other Defendant to the first transaction or occurrence involving Plaintiff and Defendant Simia. As a result, none of the other Defendants is transactionally related to Plaintiff's first claim involving Defendant Simia. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B).

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of Plaintiff's actions against the remaining Defendants appear to have occurred since March 2019, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and dismiss the remaining 28 Defendants from the action, without prejudice to the institution of new, separate

lawsuits by Plaintiff against those Defendants.[1] *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

### III.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

---

[1] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another.  Not all of the dismissed claims and Defendants would be properly brought in a single new action.

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV. First Amendment

Plaintiff alleges that Defendant Simia issued Plaintiff a misconduct ticket, threatened him, and assaulted him while stating that staff were tired of Plaintiff filing grievances. Plaintiff further alleges that Defendant Simia explained that Plaintiff could avoid being moved to an unsanitary cell if he stopped filing grievances against prison staff.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon initial review, Plaintiff's allegations sufficiently state a retaliation claim against Defendant Simia.

## V.     Eighth Amendment

Plaintiff further alleges that Defendant Simia pulled on Plaintiff's cuffs causing a cut to Plaintiff's hand, that Defendant Simia punched Plaintiff, and that Defendant Simia moved Plaintiff to a cell smeared with feces.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346. "'When prison officials maliciously and sadistically use force to cause harm," the Supreme Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Nevertheless, the absence of serious injury is relevant as a factor in determining whether the use of force plausibly could have been thought necessary to the situation. *Id.*

Eighth Amendment protections extend further to the conditions of prison confinement. Where a deprivation is alleged, the deprivation must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). That is, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant

11

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Upon initial review, Plaintiff's allegations sufficiently state Eighth Amendment claims against Defendant Simia, both for using excessive force and for subjecting Plaintiff to unconstitutional conditions of confinement.

## VI.     Fourteenth Amendment

Plaintiff alleges that Defendant Simia issued him a false misconduct ticket for disobeying a direct order. Plaintiff arguably intends to allege a due process claim.

A minor misconduct conviction does not implicate the Due Process Clause. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Plaintiff's has alleged that Defendant Simia issued a ticket for disobeying a direct order. The MDOC classifies disobeying a direct order as a Class II (i.e., minor) misconduct. *See* MDOC Policy Directive Attachment B 03.03.105B, at 1 (effective July 1, 2018), https://www.michigan.gov/documents/corrections/03_03_105_626671_7.pdf. Thus, any conviction for disobeying a direct order fails to implicate the due process clause. Accordingly, Plaintiff fails to state a viable due process claim against Defendant Simia.

### VII. Pending Motions

Also pending before the Court are Plaintiff's two motions seeking appointment of counsel. (ECF Nos. 3, 14.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Thus, the Court will deny Plaintiff's requests for appointment of counsel.

### VIII. Plaintiff's Future Filings

The Court has previously informed Plaintiff that his handwriting is difficult to read and even occasionally illegible. (ECF No. 12.) At that time, the Court provided specific instructions that Plaintiff must write neatly, must not use cursive script, and must write larger. Despite these directions, Plaintiff's amended complaint was again difficult to read and illegible in places.

Plaintiff's future filings must continue to comply with the Court's instructions to write neatly, write larger, and avoid cursive. Additionally, Plaintiff is directed that he must not write more than 25 lines of text per page of paper. Furthermore, lines of text must be evenly spaced. Should Plaintiff use any forms or lined paper, he is instructed to write no more than one

line of text per line on the paper. If Plaintiff fails to submit filings that comply with these directions, the Court may reject his filings without further review.

## **Conclusion**

Having conducted the review under Federal Rule of Civil Procedure 21, the Court determines that Defendants Macauley, Figueroa, Becher, Cheney, Peper, Russell, Yuhas, Ciluffo, Guile, Novak (hearing officer), Corbeet, Williamson, Lundquist, Morris, Miller, Saad, Connor, Zupon, Webster, Marihugh, Patel, Haynes, Sanborn, Hann, Cullimore, Randalph, Shaffer, and Novak (law library supervisor) will be dropped from the case. Plaintiff's claims against them will be dismissed without prejudice for improper joinder.

Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Fourteenth Amendment due process claim against Defendant Simia will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment and Eighth Amendment claims against Defendant Simia remain in the case.

An order consistent with this opinion will be entered.

Dated:   May 18, 2020                              /s/ Paul L. Maloney
                                                                                      Paul L. Maloney
                                                                                      United States District Judge